BARNETT *et al. v.* STATE.

(*Knoxville,* September Term, 1950.)

Opinion filed December 10, 1950.

BANDY & BANDY, of Kingsport, for plaintiffs in error.

NAT TIPTON, Asst. Atty. Gen., for the State.

MR. JUSTICE BURNETT delivered the opinion of the Court.

The plaintiffs in error were indicted under a three count indictment, charging in one count that the plaintiffs in error were guilty of feloniously transporting intoxicating liquor and in another count charging the unlawful possession thereof. Upon the trial they were convicted under each of the above named counts, the jury fixing their punishment on the count charging felonious transportation at not more than 5 years, and their punishment upon the count charging unlawful possession at a fine of $500 each. They have seasonably perfected their appeal and filed assignments in this Court from the above judgment.

It is insisted that the arrest without a warrant was illegal and the search which followed was therefore not justified, rendering the testimony of the arresting officers inadmissible. Other assignments were also made

which will be considered in this opinion. Suffice it to say the assignments touching the legality of the seizure and search are determinative of the case.

The Alcohol Tax Unit of the State had in its employ in July, 1949, two operatives, one by the name of Ford, and the other by the name of Argo. It seems from this record that Ford was the undercover man. In July, 1949, Ford obtained information in some manner that a certain truck driven by the plaintiff in error Barnett would go from Washington County to Cairo, Illinois, and procure a load of whiskey and return to this State. He imparted this information to Argo and Argo then took a pair of field glasses and went to the outskirts of a farm in Washington County where he could see the truck involved parked back of a barn. Through these field glasses he likewise obtained the license number of this truck. Some two or three days later he went back and looked back of this barn again (without trespassing on the farm in either instance) and saw that the truck was gone. As a result of seeing that the truck was gone he and other Alcohol Tax agents went to various places to look for the return of the truck. Argo and his companion Johnson stationed themselves in Middlesboro, Kentucky.

Argo testifies that on the morning of August 2, 1942, between midnight and dawn, as he was stationed in Middlesboro, this truck passed where he was stationed, and thereupon he and his partner got in their car and followed it until they came to a point where the road forked, one fork leading into Virginia, while the other led into Tennessee. When the truck arrived at this intersection it went on down through Southwest Virginia. Argo and his companion at this point took the other route through Tazewell, Tennessee, back into

Kingsport where the truck would logically come back into Tennessee after going through Virginia, entering Tennessee at Gate City. A short time after they got back to near Gate City on the Tennessee side they saw the truck coming from Virginia into Tennessee and as and after it had passed into Tennessee it proceeded up a slight grade. The truck was in low gear and pulling as if it had a very heavy load on it while at the same time the body of the truck, which was a flat body, was unloaded. It had a false bottom under this flat top which fact had been discovered by Argo when he looked at the truck through his field glasses in Washington County, Tennessee a few days before. When they saw this truck coming up the hill, pulling as it was, Argo and his companion rode up beside the truck and sounded their siren and ordered the truck to pull off the side of the road. Argo proceeded to get out of his car while Johnson drove the car around in front of the truck. As Argo walked up to the cab of the truck where the driver and McInturff were he smelled whiskey which apparently had been broken as the truck came over rough roads. While Argo was talking to the driver of the truck his companion Johnson, got up on the bed of the truck and lifted up a plank there and underneath this plank on the bed of the truck he found the false bottom containing 125 cases of various types of standard brands of intoxicating liquor and gin. As a result of this finding the whiskey was taken into the office of the Alcohol Tax Unit and arrests were made for which the indictment herein arose.

The plaintiffs in error did not take the stand or offer any proof on their behalf. The proof in the record stems entirely from the facts as related by Argo, it was stipu-

lated that Johnson would testify just as Argo did. The right of Argo to relate these facts about getting this liquor without having a search warrant was objected to.

The right to make this arrest depends entirely on whether or not the officer may arrest without a warrant under Subdivision 4 of Code, Section 11536, which is as follows: "On a charge made, upon reasonable cause, of the commission of a felony by the person arrested."

The question here under consideration has been very thoroughly considered at least four times by this Court in comparatively recent years. The first of the cases is that of *Stone* v. *State,* 161 Tenn. 290, 30 S. W. (2d) 247, opinion by COOK J., wherein he held an arrest lawful and the evidence secured by reason thereof without a warrant sufficient to support a conviction. MR. JUSTICE COOK said: "The information received by the arresting officers, coupled with the subsequent circumstances, was sufficient to lead them to the conclusion that a felony was in fact being committed by the occupant of the car." The next case that we have on the subject is that of *Jones* v. *State,* 161 Tenn. 370, 33 S. W. (2d) 59, opinion by CHAMBLISS, J., wherein various and sundry cases are analyzed and a very thorough and logical statement is adopted from an unreported case of *Martin* v. *State.* The next is that of *Vaughn* v. *State,* 178 Tenn. 384, 158 S. W. (2d) 715, opinion by McKINNEY, J., wherein he again analyzed the Code section under which this arrest was made and other cases. The last case that bears on the subject and is particularly applicable to the instant case is that of *Thompson* v. *State,* 185 Tenn. 73, 203 S. W. (2d) 361, opinion by PREWITT, J., wherein he again refers to the above cases and quotes at length from the case last above referred to. In the Thompson case, in-

formation was telephoned to the Highway Patrol that the defendant was on his way from Kentucky through Clarksville and Dover into Henry County with a load of liquor within the next day or two. As a result of this information a search warrant was secured which was not even considered in the case, the judgment being affirmed on the right of the officer to arrest without a warrant on the information furnished him.

It seems to us that under the facts of the instant case, above detailed, the officers had as much or more information that a crime was going to be committed as they did in the Thompson case. In the instant case the officer had an opportunity to see the truck before it left, see that it had a false bed thereunder, and see this truck later coming through Middlesboro, Kentucky, back toward Tennessee, taking a circuitous route to get to its destination in Tennessee. These officers cut across through Tennessee, taking a shorter route, and met this truck as it entered the State under rather unusual circumstances for an unloaded truck, that is, to be pulling a comparatively slight grade in its lowest gear. Under the circumstances here presented we feel that the officers were justified in making the arrest without a warrant. The arrest having been lawfully made the search which followed was lawful, and the testimony admissible.

The cases that we have referred to herein fully, reasonably and amply set forth our reasons of why we think the conviction herein should be affirmed. The result is that the judgment below as to the conviction under the transportation count must be affirmed with the modification that the judgment should read that the plaintiffs in error shall be imprisoned for not less than a year and a day nor more than five years. The

judgment on the second count for possession is reversed and dismissed under the authority of *Patmore* v. *State,* 152 Tenn. 281, 277 S. W. 892.

All concur.